PRINCETON TAXI OWNERS' ASSOCIATION, ETC., PLAIN-TIFF-APPELLANT, v. MAYOR AND COUNCIL OF THE BOROUGH OF PRINCETON *ET AL.*, DEFENDANTS-RE-SPONDENTS, AND THE BOARD OF PUBLIC UTILITY COMMISSIONERS, THE DEPARTMENT OF TRANSPOR-TATION OF THE STATE OF NEW JERSEY AND THE DIVISION OF MOTOR VEHICLES, DEFENDANTS-RE-SPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted June 15, 1976—Decided July 1, 1976.

Before Judges MATTHEWS, LORA and MORGAN.

*Mr. Charles R. Sperling,* attorney for appellant.

*Messrs. Mason, Griffin and Pierson,* attorneys for respondents Mayor and Council of the Borough of Princeton, Mayor and Township Committee of the Township of Princeton, Mayor Robert Cawley, Councilwoman Barbara Sigmund and Councilman Robert Powell (*Mr. Gordon D. Griffin* on the brief).

*Mr. William F. Hyland,* Attorney General of New Jersey, attorney for respondents Board of Public Utility Commissioners, Department of Transportation and Division of

Motor Vehicles (*Mr. Stephen Skillman,* Assistant Attorney General, of counsel; *Mr. Joseph W. Ferraro, Jr.,* Deputy Attorney General, submitted a statement in lieu of brief).

PER CURIAM. In April 1974 defendants Borough of Princeton and Township of Princeton both adopted similar ordinances creating a category of public transportation service popularly known as "Dial-A-Ride" and providing for the licensing and regulation of such service. Thereafter, both municipalities issued an owner's license to defendant Draper's Folly, Inc., for the operation of a ten-passenger vehicle under their respective ordinances. A Certificate of Registration for said vehicle was issued by the Commissioner of Motor Vehicles.

Plaintiff is an incorporated association of taxi and livery licensees in the Borough of Princeton and the Township of Princeton and brings this action in lieu of prerogative writs seeking, essentially, declaratory judgment that pursuant to *N. J. S. A.* 48:2–13 jurisdiction to regulate Dial-A-Ride resides with the Board of Public Utility Commissioners and not the municipalities, demanding the invalidation of the municipal ordinances as *ultra vires* and the enjoining of the operation of the Dial-A-Ride system by Draper's Folly, Inc. The trial judge dismissed the complaint as against the state agencies and granted defendants' motion for summary judgment. Plaintiff appeals, contending basically that the Dial-A-Ride vehicles are autobuses rather than taxicabs and therefore should not be permitted to operate, since they are not certified by the Board of Public Utility Commissioners.

The record indicates that Dial-A-Ride differs from conventional taxi service only in that latter usually accommodates only one fare at a time whereas Dial-A-Ride service may and does accommodate several fares simultaneously and need not transport directly to the requested destination. The service differs from autobus service in that it is not regular, does not operate on a fixed route and is not between stated termini.

■ ■ The Board of Public Utility Commissioners possesses regulatory jurisdiction over autobuses, defined generally as "any motor vehicle or motorbus operated over public highways or public places in this State for the transportation of passengers for hire in intrastate business, notwithstanding such motor vehicle or motorbus may be used in interstate commerce." However, that jurisdiction expressly does not encompass "[v]ehicles engaged in the transportation of passengers for hire in the manner and form commonly called taxicab service unless such service becomes or is held out to be regular service between stated termini." *N. J. S. A.* 48:4-1; *N. J. S. A.* 48:2-13. It follows then that the Board of Public Utility Commissioners has no jurisdiction or regulatory authority over taxicab service. Rather, if a service is taxicab service, regulatory jurisdiction lies with each municipality. *N. J. S. A.* 48:16-1; *N. J. S. A.* 40:52-1.

■ The Dial-A-Ride Taxicab Ordinances of defendant municipalities clearly describe the service as a taxicab operation and the record shows that the vehicle does not travel a fixed route; drivers are obligated to accept all passengers, within seating capacity, at any point in the municipalities, regardless of whether solicited directly or through a dispatching station, and transport them to any destination therein by such route and within such time as shall be reasonable under the circumstances, including other passenger pickups and discharges.

In view of all of the foregoing, and more particularly because there is no evidence of "regular service between stated termini," it is our conclusion that the transportation service in question is a taxicab service and not an autobus service, and as such within the authority of defendant municipalities to authorize, license and regulate.

Affirmed.